# UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
EASTERN DIST. WI
FILED

### for the

### Eastern District of Wisconsin 2020 FEB -3 P 4: 37

### Milwaukee Division     CLERK OF COURT

| | |
|---|---|
| David Trudeaux | ) Case No. **20-C-0169** |
| | ) |
| | ) *(to be filled in by the Clerk's Office)* |
| _____ | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) Jury Trial: *(check one)* [✓]Yes [ ]No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
| | ) |
| Paper Transport, Inc. | ) |
| dba PTI | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | ) |
| *write "see attached" in the space and attach an additional page* | ) |
| *with the full list of names.)* | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | David Trudeaux |
| Street Address | 2007 Hardwater Lake Road |
| City and County | Pollock, Grant |
| State and Zip Code | LA 71467 |
| Telephone Number | (501) 414-6256 |
| E-mail Address | david.trudeaux@gmail.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | Ashley Kueffer |
| Job or Title *(if known)* | Driver Manager |
| Street Address | 1250 Mid Valley Drive |
| City and County | De Pere, Brown |
| State and Zip Code | WI 54115 |
| Telephone Number | (800) 317-3650 |
| E-mail Address *(if known)* | akueffer@papertransport.com |

**Defendant No. 2**

| | |
|---|---|
| Name | Molly Brabant |
| Job or Title *(if known)* | Safety Manager |
| Street Address | 1250 Mid Valley Drive |
| City and County | De Pere, Brown |
| State and Zip Code | WI 54115 |
| Telephone Number | (800) 317-3650 |
| E-mail Address *(if known)* | mbrabant@papertransport.com |

**Defendant No. 3**

| | |
|---|---|
| Name | J. Garot VanderPas |
| Job or Title *(if known)* | Director of Operations |
| Street Address | 1250 Mid Valley Drive |
| City and County | De Pere, Brown |
| State and Zip Code | WI 54115 |
| Telephone Number | (800) 317-3650 |
| E-mail Address *(if known)* | gvanderpas@papertransport.com |

**Defendant No. 4**

| | |
|---|---|
| Name | Gerogia-Pacific |
| Job or Title *(if known)* | Compliance |
| Street Address | 2409 Chandler Road |
| City and County | Muskogee, Muskogee |
| State and Zip Code | OK 74403 |
| Telephone Number | (918) 683-7671 |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Paper Transport Inc/Georgia-Pacific |
| Street Address | 131 S 41ST St E |
| City and County | Muskogee Muskogee |
| State and Zip Code | OK 74403 |
| Telephone Number | (920) 617-5825 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

Title I of the Civil Rights Act of 1991

☑ Relevant state law *(specify, if known)*:

Wisconsin Fair Employment Act

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [ ] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*:   Failure to accommodate my religious practice of Sabbath.

   *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

   January 5, 2018 through April 2018

C. I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [ ] race
- [ ] color
- [ ] gender/sex
- [x] religion     Jewish
- [ ] national origin
- [ ] age *(year of birth)*                     *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

E. The facts of my case are as follows. Attach additional pages if needed.

## HISTORY

1.      Plaintiff Trudeaux was issued a commercial driver's license in 1999 and has been a commercial truck driver since 2000. The plaintiff is Jewish and in practice of his religion observes Sabbath. This prohibits him from laboring from sundown on Friday until sunset on Saturday.

2.      Transportation is a 24/7 industry and this observation fell outside industry norms. Industry standard for operations requires a minimum average of 2,000 miles per truck each week. The targeted performance is 2,500-3,000 miles. The Defendant's performance standard was 2,500 miles per week.

3.      Since 2000, Plaintiff has work for half a dozen carriers. Accommodation required these carriers to lose a full day of operations. The scheduled work week at PTI was only 5.5 days a week. Accommodation did nor require any lost time in operations.

4.      Every carrier prior to the defendant had accommodated plaintiff's religious practice, either by scheduling his time off during Sabbath or not requiring him to drive, receive or make deliveries while observing Sabbath. This accommodation had caused any adverse effect to their operations.

## STATEMENT OF CLAIMS

5.      As more fully described below, on or about January 5, 2018, Defendant engaged in unlawful employment practices while representing Georgia-Pacific at its facility in Muskogee, Oklahoma in violation of Section 703 of Title VII, when they refused to accommodate the sincerely held religious beliefs of Trudeaux.

6.      Trudeaux is Jewish, and as such is Torah observant and must keep the Sabbath day holy. This mitzvah (commandment) is a requirement of his faith. Trudeaux holds the sincere religious belief that he must not engage in labor during Sabbath. According to his faith, Sabbath begins at sundown on Friday and ends at sunset on Saturday.

7.     In November 2017 Trudeaux was seeking employment after a medical leave due to a work-related injury. PTI was advertising a Dedicated Regional Class A CDL Driving position in Fort Smith, AR near where Trudeaux lived. The overview from the Defendant for this position was that the position reset (off 34 hours or more) at home every week; the schedule was 5.5 days, Sunday-Friday; and with an average compensation of $68,700 per year.

8.     Defendant called and spoke with Angela Solie, PTI Recruiter. Solie informed Trudeaux this was a dedicated account for Georgia-Pacific for their tissue plant in Muskogee, OK. Arkansas drivers parked their tractors in Fort Smith. They would bring a transfer load from the GP plant in Fort Smith to Muskogee at the start of the week and another back back at the end of the week.

9.     PTI only serviced GP customers within approximately 500 miles of the plant. For the remainder of the week, all other loads began and then returned to Muskogee. Drivers made a customer deliver from the plant and then would would pick up supplies or a scrap load for GP to bring back.

10.     Upon further prompting as to the schedule, Solie indicated that drivers on the Muskogee account are typically home by noon on Friday but occasional do not get back until the afternoon. Based on this representation, Trudeaux applied to drive for PTI.

11.     On December 13, 2017 Trudeaux was interviewed by Solie. In the interview Solie offered an alternate schedule the Defendant had of Monday-Saturday. According to Solie, this schedule was to accommodate Christian driver who want to attend Sunday services. Trudeaux declined, informing Solie he wanted Saturday as he attended services on Friday and the schedule was the reason he had chosen PTI over other carriers.

12.     Solie told Trudeaux that the company had a strict cell policy. Upon question, Solie explained that drivers were required to use a one-touch Bluetooth device whenever driving. Plaintiff informed Solie his Bluetooth was compliant and that he used it even when not driving.

13.     On or about Friday, December 22, 2017 Trudeaux was offered and accepted a position with PTI. PTI employs hundreds of drivers with annual revenue in excess of $1,000,000. New hires are are required to attend a orientation at corporate in De Pere, WI. Corporate orientation last several days. Muskogee drivers are provided an abridged orientation on site by the equipment manager. The abridged orientation last half a day.

14.     On or about Wednesday, December 27, 2017 Trudeaux attended orientation in Muskogee with Bob Suiter, Equipment Manager. Suiter began at 10:00 AM. A half hour was utilized for a road test, followed by several videos and then paperwork. This abridged orientation was concluded by 13:00.

15.     During the abridged orientation Suiter provided a black binder presented to Trudeaux as his handbook and the Federal Motor Carriers Pocketbook outlining the Federal Motor Carriers Safety Regulations of the US Department of Transportation for Commercial Drivers. Suiter then presented a document which he represented as an acknowledgement for receipt of the handbook. The plaintiff signed based on this representation. The signed agreement went to corporate and Plaintiff was not provided a copy.

16.     The handbook provided corporate orientation included company policy, including the PTI Safety Manual. The Muskogee handbook did not include company policy or the safety manual but only operational information for Muskogee Drivers.

17.     During the abridged orientation Suiter noted that Trudeaux was wearing a Bluetooth device, representing the Plaintiff was compliant with the company cell policy. Suiter then

presented a document which he represented as an acknowledgement that the plaintiff would use the device while driving. The plaintiff signed based on this representation. The signed agreement went to corporate and Plaintiff was not provided a copy.

18.     The cell phone acknowledgement included additional policies beyond Bluetooth compliance. This information is reviewed during corporate orientation but was not included in the abridged orientation. Suiter failed to include the small print which further prohibited having a cellphone accessible within arms reach and could not be stored in cup holders or overhead cabinets. These prohibitions were not a part of the abridged orientation nor represented by Solie during the plaintiff's interview.

19.     On or about Thursday, December 27, 2019 Trudeaux was assigned a tractor and given his first assignment. Trudeaux was back before noon on Friday as promised.

20.     Plaintiff's first full week began the following Monday. Plaintiff did not return until after sunset on Friday, January 5, 2018. This was in violation of his religious practice and prohibited him for attend services Friday evening as was his practice.

21.     On or about Sunday, January 7, 2018. Trudeaux spoke with his manager, Ashley Kueffer about this matter, informing her that getting home so late had caused him to miss services on Friday evening. In addition, Trudeaux identified that he observed a biblical Sabbath. This prohibited him from working after sundown on Friday. According to Kueffer arriving back so late was unusual and they just needed to get Trudeaux into the rotation.

22.     Kueffer further explained that GP has committed to giving them enough work to keep 60 drivers working and was looking to add an additional 5 drivers. GP provides PTI a few dozen loads each morning. These fall into three categories: 1) Longer hauls to customers 300-500 miles away;

2) Shorter hauls to customers within a couple hundred miles and 3) daily Transfer loads to the Hutchins (Dallas) plant 200 miles south of Muskogee.

23.  PTI was free to assign these loads to any driver. To have drivers home for a weekly reset and maintain company standards, they assigned drivers in one of two ways, either 1) two longer hauls and one shorter haul, or 2) 4 or 5 shorter or transfer loads. Accommodation simply required PTI to plan that Trudeaux be assigned a shorter load or a couple transfer loads as his final assignments for the week. GP provided several short hauls and daily transfer loads.

24.  Previous carriers which had accommodated Plaintiff did not have all these option available.

Additionally, they had to cover much a significantly larger geographic location

25.    Georgia-Pacific maintains policy not just for employees but any third party which contracts for them. PTI fell under Georgia-Pacific Third Party Code of Conduct requires adherence to all Georgia-Pacific policies and standards of conducted, including but not limited to prohibiting any and all discrimination.

26.    Adherence for Third Parties requires them to seek guidance as to the proper course of conduct. Options are provided to report any activity that may be inconsistent with the law or Georgia-Pacific Standards.

27.    Third Parties are to ensure that any and all directors, managers, officers, employees, agents and representatives that devoted time to Georgia-Pacific matters understood the required code of conduct and be in compliance in connect with activities conducted on behalf of Georgia-Pacific.

28.    On or about January 11, 2018 the Plaintiff discovered that he had been improperly loaded at his back haul. While Trudeaux was not over gross weight, due to the loading error he was over on his tandem.

29.     The policy of the Defendant is whenever any load cannot be run legally, the driver must contact dispatch for disposition. It was after hours and the shipper was closed so Trudeaux called Extended Operations for resolution. Extended Operations offered that as the shipper was now closed, Trudeaux was not over gross and there was no weight station between the shipper and the plant, he could run the load if he was comfortable doing so. Trudeaux brought the load back as instructed.

30.     The following morning Kueffer contacted Trudeaux about the issue. Trudeaux explained the resolution from Extended Service. According to Kueffer that was not policy and he should have been directed to return to the shipper and wait to be reloaded when they opened.

31.     On or about January 12, 2018 Molly Brabant, Safety Manager, called the Plaintiff. Brabant informed Trudeaux of an in-cab camera he not been notified was in his tractor.

32.     According to Brabant, the camera had been tripped by a potential incident on January 10TH. As a result a 10 second video snippet from in the cab was sent for her to review. There had been no incident, but according to Brabant had been triggered when the Plaintiff hit a pot hole and this commonly creates a false indication of a potential accident.

33.     Brabant stated she was concerned because it appear that the Plaintiff had a cell phone on his leg in the video. Trudeaux informed Brabant that he kept it on his lap to see who was calling and decide whether it was necessary to take the call while driving. The Plaintiff then assured he that he was always Bluetooth compliant as he understood was his requirement.

34.     Brabant informed Trudeaux this was a violation of the company cell phone policy which also prohibit a driver from having his phone within arm's reach. Trudeaux informed Brabant that he was unaware of this policy.

35.    According to Brabant, this was supposed to be covered in orientation. Trudeaux informed her that Suiter had not covered and that he, like Solie during his interview had simply told him he was required to be Bluetooth compliant. Brabant stated her belief that Suiter was incompetent and the company should not allow him to orient Muskogee driver's as they do not receive proper training.

36.    According to Brabant, in the snippet the Plaintiff's cell phone had fallen off his lap and in between his legs by the jarring of the pothole. She then observed him reach down, grab his phone and place it back on his lap.

37.    According to Brabant, PTI has a zero-tolerance policy regarding cell phone use and he would be placed on cell phone probation. If there was a second incident while on probation, he would be terminated. Brabant never provided the Plaintiff with a copy of the policy which he had not received in orientation.

38.    Trudeaux informed Brabant that he was not using his mobile phone. According to Brabant, she did not know whether he was using his phone or not but because Trudeaux had touch it while driving he was in violation whether using the phone or not.

39.    On or about January 15, 2018 Trudeaux spoke with Kueffer about being placed on probation without warning, being trained or informed about the policy. Kueffer suggested that he speak with Ken Marvenko, Director of Safety, about his concerns.

40. ·   On or about January 17, 2018 Trudeaux spoke with Marvenko. According to Marvenko, cell phone usage was a DOT (Department of Transportation) Safety Sensitive issue. This alleviate the company from providing progressive discipline.

41.     According to Marvenko, when this was initiated all drivers was warned multiple times of the strict two strike policy prior to implementation. With their first violation they were placed on probation. A second violation while on probation resulted in automatic termination.

42.     The defendant had not received any warning as to this policy as it had been implemented before he was hired and had not been covered in orientation. According to Marvenko, he could not deviate from this policy for any reason.

43.     Marvenko stated that PTI did not wish to harm anyone due to these terminations. As a result, PTI did not list cell phone violations as the cause. Instead, the cause was cited as a failure to adhere to a company policy. Marvenko also failed to provide Trudeaux with a written copy of the Defendant's policies and procedures

44.     The Plaintiff followed up the conversation with an email to Marvenko, asking if all DOT Safety Sensitive issues are handled on a two-strike basis.

45.     In his January 17TH reply to Plaintiff's email, Marvenko responded that the cell phone is a 1 strike, 2ND strike you are out but PTI did follow progressive discipline otherwise.

46.     Marvenko explained: "We do follow a progressive discipline (Driver Safety Manual) where its verbal, written, probation, termination. Needless to say, it is based off severity of incident. So… as an example, not wearing a seatbelt would likely constitute a verbal warning and go from there. A crash (based of severity) may warrant a written or probation, or termination. So…there isn't necessarily a hard and fast rule, its based off the severity of incident."

47.     On January 22, 2018 the Plaintiff resigned effectively immediate upon return to the terminal.

48.     The Plaintiff was contacted by Brabant who refused to accept his resignation. Brabant asked if this had to do with his probation. Trudeaux replied it was and explained that he had issue

with not having been informed about the policy prior to the incident. Further he had inadvertently put his phone in his cup holder. When the Plaintiff had hit a bump and this could have triggered the in-cab camera to go off. The Plaintiff realized his mistake and that if his phone was visible, he would be terminated. The Plaintiff explained that he could not afford to put his career in jeopardy over a simple oversight.

49.     Brabant assured Trudeaux this would not happen as she reviewed the videos. According to Brabant, that so long as Trudeaux did hold or use his phone while driving, he would not be terminated.

50.     Brabant added that now that he was aware of the policy, there would be no second event. Based on this promise, the Plaintiff stayed on and signed the Notification of Probationary Status the following day. Plaintiff was not provided a copy of the notification.

51.     The Plaintiff continued to raise this issue of religious accommodation with Kueffer. Each week she repeatedly told him accommodation would be forth coming. Week after week passed without accommodation.

52.     On or about February 8, 2018, Trudeaux emailed Kueffer, once again outlining his religious practice and venting about the lack of accommodation. Kueffer did not respond and plaintiff continued to be scheduled in violation of his religious practice.

53.     The week of February 18th, 2018 plaintiff was assigned to delivery to US Foods in Buda, TX for 04:00 on Friday, February 23, 2018. Delivery at US Foods Buda typical takes 6-8 hours. As a result, Plaintiff was not schedule to pick up his return scrap load in Austin, TX until 14:00. This assignment would not allow Trudeaux to be back before sunset.

54.     On February 20, 2018 Trudeaux send a message to Kueffer claiming to be confused by the assignment, outlining his repeated request for accommodation having been ignored, other drivers

outside his faith were being accommodated and making it known that he was prepared to go outside the company for accommodation.

55.     On February 21, 2018 Kueffer responded to Trudeaux, acknowledging having spoken on this issue before. Kueffer further stated that PTI does not discriminate against any one for any reason. She continued by outlining numerous issue which PTI did not have control of. None of the issue outlined by Kueffer were different than the demands of any other carrier, yet all carriers Trudeaux had worked for prior to the Defendant had accommodated his religious practice.

56.     In the response. Kueffer acknowledged that a previous pick up failure was caused by an HOS (Hours Of Service for Commercial Drivers) and the OSD (Overage, Shortages and Damaged products). The OSD issue had in fact caused the delivery. As will be discussed in greater detail below, Kueffer noted in a summary of Plaintiff used for termination that the event for PTI that failure was only attributable to the Plaintiff.

57.     Upon reading Kueffer's reply that afternoon, the Plaintiff contacted the EEOC Hotline for clarification. He explained his attempts to gain accommodation the preceding months and read the message exchange to the representative. According to the representative, the company had already discriminated against him for failing to accommodate his religious practice and the excuses being used were not valid reasons to not comply.

58.     The Plaintiff immediately replied back to Kueffer's, replaying that the company was discriminating against him by failing their legal requirement to accommodate his religious practice. This was forwarded to PTI management and the Defendant immediately became hostile toward Trudeaux.

59.     Chad Barker, Manager of Extended Operations responded by removing the delivery Trudeaux was in the middle of picking up along with all other dispatches.

60.     Plaintiff requested to be allowed to continue his current assignment which was returning him to the Muskogee plant. Extended Operations stated he could drive until he spoke with Garot VanderPas, Director of Operations the following morning. The Plaintiff was made to shut down in Memphis TN without work.

61.     Plaintiff was contacted by VanderPas Thursday morning, February 22, 2018. VanderPas indicated he done some research the night before and now understood the obligation to accommodate Defendant's religious practice.

62.     VanderPas inquired whether the Plaintiff was willing to make a delivery to a customer they had in Houston on Fridays. According to VanderPas, they could rely on this customer to have him out on time. Plaintiff replied that if VanderPas had a good faith belief that he would be back before sundown then he would accept any assignment. Defendant also informed VanderPas he had spoken with the EEOC and if PTI continued failing to accommodate his religious practice he would have no choice but to file a complaint. According to VanderPas this would not be necessary.

63.     Following the conversation with VanderPas, the Defendant the one assignment he had previous begun restored but not the other work. When the Plaintiff returned back to Muskogee he was not provided any additional work and sent home for the week. This resulted in the loss of several hundred dollars in wages for the week.

64.     The Defendant receives daily reports of any log issues for review and up until now had not relayed concerns to the Plaintiff about one issue.

65.     On Friday, February 23, 2018 Kueffer informed Trudeaux that his logs had pulled for review and the Defendant was now concerned.

66.     On Monday, February 26, 2018 Kueffer and Brabant held a conference call to review their concerns. Most of the concerns had not raised when reported.

67.    The Defendant recorded the concerns from February 26TH to Trudeaux's file as if they raised the issues prior to the Plaintiff's claim of discrimination.

68.    During the call, Brabant contradict her previous explanation to Trudeaux about the cell phone probation from January 10, 2018. Now according to Brabant, the Plaintiff's probation was not just for cell phone violations but was a general safety probation for which Trudeaux could be terminated with any safety violation.

69.    The explanation from Brabant contradicted the explanation by Marvenko, her superior, as to progressive discipline and was not based on the severity of the incident, including DOT Safety Sensitive issues such as an accident

70.    The Notification of Probationary Status from 1/10/18 stated: "any additional safety violations will be reviewed and may lead to elevated probationary status or possible termination of employment".

71.    The Defendant did not notify Trudeaux of any elevated probationary status, nor provide progressive discipline for the concerns raise on February 26TH.

72.    On or about March 13, 2018 the Plaintiff broke down in Lubbock TX. According to the operations manual given to Muskogee drivers, when a driver break downs the Defendant will provide a rental truck until the assigned tractor is being repaired.

73.    Trudeaux was not provided a rental truck and instead made to stay in Lubbock without work until the repairs were completed Friday afternoon, March 16, 2018. This caused Trudeaux to lose several hundred dollars in wages for the week.

74.    The Plaintiff agreed to forgo his home time having already been off for 3 days. By the time the repairs were complete, the Defendant had already assigned all the Georgia-Pacific loads for the day and instead secured a broker load.

75.     The Defendant assigned Trudeaux this load in direct violation of his religious practice. Assigning the Plaintiff to pick up from Coca-Cola in Abilene TX by 18:00, then drive after sunset on Friday evening to Oklahoma City OK and make delivery by 10:00 Saturday morning, March 17, 2018.

76.     Trudeaux called and informed Kueffer that he would pick up the load as this would be before sunset but was refusing to drive or make delivery until after sunset on Saturday and would not arrive to the receiver until after midnight.

77.     Trudeaux called the broker to ensure the receiver would take him late. According to the broker, the receiver was a 24/7 location, appointments were not required and he would be taken on a first come, first serve basis. The broker told Trudeaux that the load was not due to be delivered until noon on Monday, March 19, 2018.

78.     The Defendant terminated Trudeaux immediately following his refusal to drive or make delivery as assigned in violation of his this religious practice.

79.     On Monday, March 19, 2018 the Plaintiff was contacted by Brabant. According to Brabant, she received a notice of a possibly collision from Friday, March 16, 2018. Brabant asked if Trudeaux had been in an accident. The Plaintiff stated he had not been involved in any accident.

80.     Brabant stated that she had reviewed the video snippet and heard a noise which she believed to have been the trailer tandems sliding. Brabant stated this had occurred because Trudeaux had failed to secure them rather than by mechanical failure.

81.     Trudeaux informed Brabant that that the only noise he recalled from Friday had been when the truck had popped out of gear. He also informed her that when he checked the tandems during his post trip they were locked in place and had not moved from where he set them at the shipper that evening.

82.     The event had occurred after dark, once Trudeaux had been loaded and was moving to a safe haven. The Plaintiff offered that he had traveled through a construction zone and any noise could have been debris kicked up against the trailer at highway speeds.

83.     Brabant placed Trudeaux on brief hold. Upon returning she stated that she had several other managers review the video and all stated they only possible cause was the tandems sliding from being unsecured and that she was terminating the Plaintiff.

84.     The video did not show the tandems sliding. This was not a safety sensitive issue such as an accident and was without severity as it did not result in any damage or injury of any kind.

85.     The Plaintiff immediately sent a message to VanderPas that this termination was in retaliation for his claim of discmination.

86.     The Defendant has an open door policy. VanderPas did not respond.

87.     The Defendant reported the terminated as being due to Trudeaux violating DOT prohibition of using hand-held mobile telephone.

88.     The DOT prohibition of using hand-held mobile telephones does not include the Defendant's arm's reach policy.

89.     According to Marvenko, the Defendant did not report driver terminated before who had a second strike of cell phone usage. The Plaintiff was denied employment in spite of a good driving record as a result of the false report by the Defendant.

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion and to provide appropriate relief to David Trudeaux ("Trudeaux" or "Plaintiff") who was adversely affected by such practices. As alleged with greater particularity in the attached STATEMENT OF CLAIMS, plaintiff alleges that Paper Transport Inc. ("PTI" or "Defendant") under contract to Georgia-Pacific ("GP") failed to accommodate Trudeaux's religious beliefs, created a hostile work environment in retaliation of Trudeaux's attempt to gain accommodation, and then terminated Trudeaux because of his religion, Jew, in violation of Title VII. PTI cotinued to retaliate against Trudeaux after his termination by making false reports as to the cause of his termination to keep prospective employers from hiring him.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
Charge No. 443-2018-00983 made on May 8, 2018

B.   The Equal Employment Opportunity Commission *(check one)*:

☐  has not issued a Notice of Right to Sue letter.

☑  issued a Notice of Right to Sue letter, which I received on *(date)*   December 3, 2019  .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐  60 days or more have elapsed.

☐  less than 60 days have elapsed.

## V.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1-Permanent injunction enjoining Defendant from discriminating against current or future employees based on their religious beliefs and need for a reasonable accomdation for those beliefs. 2-Order Defendant to institute an effective policy prohibiting religious discrimination and providing for religious accomdations to eradicae the effects of its past and present unlawful employment practices. 3-Order Defendant to make Trudeaux whole, providing: a) back pay with prejudgement interest; b) affirmative relief including, but not limited to, reinstatement or front pay; c) compensation for past and future pecuniary and non-pecuniary losses, including for emotional suffering, loss of civil rights, and other non-pecuniary losses; and d) punitive damages. Amounts to be determined at trial.
4-Granting further relief as the Court deems necessary and proper in the public interest.
5-Award any cost, legal or otherwise, incurred as a result of this action.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        January 31, 2020

Signature of Plaintiff

Printed Name of Plaintiff        David Trudeaux

Sworn to and subscribed before me, notary, this 31st day of January, 2020.

Mary W. Eznack        *Mary W Eznack*
035391        Notary

### B.        For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address