# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVID TRUDEAUX,

                Plaintiff,

    v.                                  Case No. 20-CV-169

PAPER TRANSPORT, INC.,

                Defendant.

## ORDER

Plaintiff David Trudeaux was discharged from his position as a commercial truck driver with defendant Paper Transport, Inc. (PTI) in March 2018. (ECF No. 1, ¶¶ 1, 13, 78.) Trudeaux alleges that PTI failed to accommodate his religious practice of observing the Sabbath, terminated him because of his religious practice, and retaliated against him for seeking religious accommodations and communicating with the Equal Employment Opportunity Commission (EEOC). (*See* ECF No. 1.) PTI has moved for summary judgment on each of Trudeaux's claims. (ECF No. 40.) That motion is fully briefed and ready for resolution. All parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 15.)

1. Facts

PTI is a regional and intermodal trucking company with headquarters in Green Bay, Wisconsin. (ECF No. 42, ¶ 1.) A commercial truck driver with over twenty years of experience, Trudeaux interviewed for employment with PTI on December 13, 2017. (*Id.*, ¶ 4.) Trudeaux is Jewish and observes the Sabbath, so he is prohibited from working from sundown on Friday until sundown on Saturday. (*Id.*, ¶ 3.) He applied for a driving position with PTI in part because PTI recruiter Angela Solie represented to him that drivers working in that position "are typically home by noon on Friday," meaning he would be home in time to observe the Sabbath. (ECF No. 1, ¶¶ 10-11; *see also* ECF No. 50, ¶¶ 23-25.) Because he was "led to believe that the schedule offered was sufficient to meet his religious practice," he did not explain to PTI his need for religious accommodations. (ECF No. 50, ¶ 40; *see also* ECF No. 42, ¶ 5.)

Trudeaux was offered the position and began driving for PTI on December 29, 2017. (ECF No. 42, ¶ 2.) He was terminated eleven weeks later, on March 19, 2018. (*Id.*, ¶ 27.) PTI says it terminated him for incurring "numerous safety and policy violations." (*Id.*, ¶ 7; *see also* ECF No. 43, ¶ 26.) Those violations included: failing to wear a seatbelt, failing to stop fully at all lights and stop signs, failing to properly secure the tandems on his truck, speeding, running an overweight load, and exceeding his hours of service. (*See* ECF Nos. 42, 43.) He was also cited for a near collision and for violating PTI's cellphone

policy numerous times. (*See id.*) Trudeaux does not deny incurring these violations but disagrees that they were the basis for his termination. (*See* ECF No. 44-1 at 9, 191:14-18.)

**2. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

**3. Analysis**

**3.1. Failure to Accommodate**

Trudeaux claims that PTI failed to "accommodate [his] religious practice of Sabbath" in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 1 at 3, 4; *see also id.*, ¶ 5.) He alleges that, during his first full week at PTI, he "did not return until after

sunset on Friday," violating his religious practice and prohibiting him from attending Friday evening services. (*Id.*, ¶ 20.) He discussed his late return with his manager, Ashley Kueffer, who told him that his late return was unusual and that he "just needed to get [] into the rotation." (*Id.*, ¶ 21.) "[S]he repeatedly told him accommodation would be forth coming," but "[w]eek after week passed without accommodation." (*Id.*, ¶ 51.)

"Title VII requires an employer to try to accommodate the religious needs of its employees, that is, to try to adjust the requirements of the job so that the employee can remain employed without giving up the practice of his religion, provided the adjustment would not work an undue hardship on the employer." *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003). Trudeaux maintains that "PTI made no attempt of any kind to accommodate him during [his employment]." (ECF No. 51 at 3; *see also* ECF No. 50, ¶¶ 64, 91, 100.)

PTI contends that it "reasonably accommodated Trudeaux's religious beliefs." (ECF No. 41 at 5.) Citing Trudeaux's deposition testimony, it argues that Trudeaux acknowledged "that PTI accommodated his religious beliefs for a period of time leading up to his termination," admitting "that PTI offered different schedules, offered to remove loads from [his] schedule, and otherwise engage[d] in ongoing attempts to accommodate his religious beliefs." (*Id.* at 6-7.)

Trudeaux testified at his deposition that PTI accommodated his religious practice for two weeks in February and March 2018. (ECF No. 44-1 at 8, 167:6-10.) He described an occasion where Kueffer got him an appointment where he could make his delivery in the "2:00 [a.m.] to 4:00 [a.m.] window" so he could "get in and get out of there" in time to get home and observe the Sabbath. (*Id.* at 5, 96:10-98:10.) He also testified that he believed Kueffer was "making a good-faith effort" to accommodate his needs and that she was "very professional" and "helpful." (*Id.* at 6, 7, 101:8-22, 102:6-12.)

But Trudeaux maintains that PTI "failed to accommodate [him] for his religious practice by continuing to schedule him to work past sundown on Friday throughout January 2018." (ECF No. 50, ¶¶ 64, 90, 99; *see also* ECF No. 51 at 7.) PTI fails to offer evidence to the contrary. "Summary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). What PTI offers in Becky Davies's declaration—a conclusory remark that it "attempted to accommodate Trudeaux's schedule to ensure that he would be home by sundown on Fridays" and that "Trudeaux's own scheduling mishaps prevented this from occurring"—is not, without more, enough to convince a trier of fact that PTI reasonably accommodated Trudeaux's religious practice. (ECF No. 43, ¶ 27.) Because there is still a genuine dispute as to whether PTI reasonably accommodated Trudeaux's religious

5
Case 2:20-cv-00169-WED   Filed 01/11/22   Page 5 of 13   Document 54

practice from January 2018 through late February 2018, PTI's motion for summary judgment with regard to Trudeaux's failure to accommodate claim is denied.

### 3.2. Discrimination and Disparate Treatment

Trudeaux claims that PTI violated Title VII by terminating his employment "following his refusal to drive or make delivery as assigned in violation of his [] religious practice." (ECF No. 1 at 3, 4; *see also id.*, ¶ 78.) He alleges that PTI in March 2018 assigned him "a load in direct violation of his religious practice," that he responded by "refusing to drive or make delivery until after Saturday," and that he was consequently terminated. (*Id.*, ¶¶ 75-78.)

"Title VII makes it unlawful to discharge or otherwise to discriminate against an individual because of that individual's religion." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1574 (7th Cir. 1997) (citing 42 U.S.C. § 2000e–2(a)(1)). "To survive summary judgment on a Title VII discrimination claim, a plaintiff must present 'evidence [that] would permit a reasonable factfinder to conclude that the plaintiff's … religion [] or other proscribed factor caused the [adverse employment action].'" *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

PTI argues that Trudeaux "was subject to adverse employment actions, culminating in his discharge for cause, because he violated safety standards and PTI policies," not because of his religion. (*See* ECF No. 41 at 8.) It relies on the declaration of

Becky Davies, PTI's Vice President of Human Resources, which lists over a dozen safety violations that Trudeaux committed during his brief employment with PTI. (*See* ECF Nos. 42, 43.)

Trudeaux responds by claiming that he did not violate PTI's safety standards and that he was instead terminated for "having refused to work in violation of his religious practice." (*See* ECF No. 51 at 7; ECF No. 50, ¶ 136.) Trudeaux offers only conclusory allegations to support his claim. (*See, e.g.*, ECF No. 50, ¶¶ 119, 136.)

To establish a prima facie case of discrimination a plaintiff must offer evidence that: "(1) [he] is a member of a protected class, (2) [his] job performance met [the employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Trudeaux has not presented evidence to show that his job performance met PTI's legitimate expectations or that another similarly situated individual who did not practice Judaism and observe the Sabbath was treated more favorably than he was. *Cf. Basir v. Med. Coll. of Wisconsin*, No. 18-CV-1136, 2020 WL 433883, at *6 (E.D. Wis. Jan. 28, 2020) (granting the employer's motion for summary judgment in part because the former employee failed to present evidence that another similarly situated individual who was not in the protected class was treated more favorably than the former employee.)

Even if Trudeaux had established a prima facie case of discrimination, he has not presented evidence that PTI's stated reason for terminating him—his multiple safety violations—is pretextual. *See Coleman*, 667 F.3d at 845. He claims that PTI "falsified" his employment records with "fabricated" safety violations "to help PTI target him for dismissal" but provides no evidence to show that the safety violations were "fabricated." (ECF No. 50, ¶ 119). He does not, for example, provide evidence that PTI was growing increasingly frustrated with his repeated requests for accommodation and was looking for a reason to terminate him as a result. *Compare with Wescher v. Chem-Tech Int'l, Inc.*, No. 13-CV-229, 2014 WL 12637039 (E.D. Wis. Aug. 19, 2014) (denying an employer's motion for summary judgment when its former employee presented an email showing that the employer was looking for a reason to terminate him after growing frustrated with his frequent absence due to his obligations with the Air Force Reserves).

Moreover, at his deposition Trudeaux admitted to having incurred the safety violations. (*See* ECF No. 44-1 at 9, 191:14-18.) Therefore, his claim that these violations were instead "fabricated" is a change in testimony so "incredible and unexplained" that it must be excluded under the sham affidavit rule. *See United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016) (when the testimony given in an affidavit or declaration opposing summary judgment so differs from the testimony given at an earlier deposition, then the testimony given in the affidavit or declaration must be excluded).

In all, Trudeaux has failed to present evidence that would permit a reasonable factfinder to conclude that his religion caused his termination. Consequently, PTI's motion for summary judgment with regard to Trudeaux's discrimination and disparate treatment claim is granted.

**3.3. Retaliation**

Trudeaux next alleges that PTI retaliated against him for claiming religious discrimination and for communicating with the EEOC in violation of Title VII. (ECF No. 1 at 3, 4.) He claims that he told Kueffer that PTI "was discriminating against him by failing their legal requirement to accommodate his religious practice" (*Id.*, ¶ 58) and that he told PTI Director of Operations Garot VanderPas "he had spoken with the EEOC and if PTI continued failing to accommodate his religious practice he would have no choice but to file a complaint." (*Id.*, ¶ 62). He claims that PTI "immediately became hostile toward" him as a result, cancelling his deliveries (*Id.*, ¶¶ 54-59, 61-63), raising new concerns about his driving log (*Id.*, ¶¶ 65-69), and eventually terminating him (*Id.*, ¶ 85).

"Title VII forbids an employer from discriminating against an employee … who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting 42 U.S.C. § 2000e–3(a)). "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms … by prohibiting employer actions that are likely 'to deter victims of discrimination from

complaining to the EEOC,' the courts, and their employers." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

"To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce 'evidence that would permit a reasonable factfinder to conclude that [his] engagement in protected activity caused a materially adverse … action.'" *Arteaga v. Brennan*, No. 17-CV-1282, 2019 WL 6497953, at *4 (E.D. Wis. Dec. 3, 2019) (citing *Fields v. Bd. of Educ.*, 928 F.3d 622, 626 (7th Cir. 2019)); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017) ("To survive summary judgment on his retaliation claim, [plaintiff] must establish that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.").

Trudeaux was discharged in March 2018. (ECF No. 42, ¶ 26.) He filed a charge with the EEOC two months later, in May 2018 (ECF No. 1 at 20), but claims to have communicated with an EEOC representative as early as February 2018 (*see, e.g.*, ECF No. 50, ¶ 101). He claims to have raised PTI's alleged discrimination with PTI representatives and to have informed them of his conversations with the EEOC around the same time. (ECF No. 1, ¶¶ 58, 62.) Because Trudeaux is proceeding pro se, this court will consider the claims Trudeaux alleged in his complaint in deciding PTI's motion for summary judgment. *See Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) (internal citations omitted.)

PTI argues that there is no causal link between Trudeaux's termination and his communicating with PTI representatives or his communicating with and filing a charge with the EEOC. Instead, it argues that "the record clearly shows that [Trudeaux's] history of safety and policy violations was the sole reasoning for his termination." (ECF No. 41 at 10.)

Trudeaux maintains that "PTI began immediately retaliating against [him] by creating a hostile work environment and targeting him for dismissal." (ECF No. 50, ¶ 104.) Trudeaux repeats the allegations he made in his complaint, claiming that PTI cancelled his work for the week, falsified his employment record so as to target him for dismissal, and escalated hostilities by imposing stricter conditions on his probation. (*See* ECF No. 50.)

Trudeaux suffered adverse employment actions after communicating with the EEOC and after raising PTI's alleged discrimination with PTI representatives. Indeed, the screenshots of Trudeaux's communications with PTI's Extended Operations representative Chad Barker and of his email inbox that Trudeaux includes in his surreply show that some of his deliveries and assignments were canceled, and there is no dispute that Trudeaux was terminated. (ECF No. 53 at 9-10.) But timing "standing alone [] does not create a genuine issue as to a causal connection" between Trudeaux communicating with the EEOC and raising PTI's alleged discrimination with PTI representatives and these adverse employment actions. *See Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d

317, 321 (7th Cir. 1992); *see also Basir* 2020 WL 433883, at *9 (internal citations omitted). And aside from those screenshots, Trudeaux offers only conclusory allegations to support his retaliation claims. (*See, e.g.*, ECF No. 50 ¶¶ 114, 116-17, 119.) As explained above, he does not, for example, offer evidence showing that PTI "fabricated" safety violations in his record in retaliation for communicating with the EEOC or for raising allegations of discrimination with PTI representatives.

Moreover, there is evidence that Trudeaux lost assignments because PTI was *attempting* to accommodate him. As Trudeaux testified to at his deposition: "No, for—the next two weeks accommodation occurred, although most of it happened by sending me home early and not getting my third trip in rather than finding a short trip or other work to do." (ECF No. 44-1 at 8, 167:6-10; *see also* ECF No. 50, ¶¶ 106-11.) Therefore, without more, no reasonable factfinder could conclude that Trudeaux lost assignments or was terminated for communicating with the EEOC or for raising alleged discrimination with PTI representatives. *Cf. Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892–93 (7th Cir. 2003); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). As a result, PTI's motion for summary judgment with regard to Trudeaux's retaliation claim is granted.

4. **Conclusion**

Trudeaux's claim that PTI failed to accommodate his religious practice will be allowed to proceed. The scope of that claim is limited: as Trudeaux writes in his brief, he is only alleging that PTI failed to accommodate his religious practice for a period of seven

weeks, from January 2018 through late February 2018. (*See* ECF No. 51 at 6 ("PTI alleges that upon notification of Trudeaux's religious practice, failing to make any accommodation for 7 weeks was reasonable.").) Because of this limited scope, if he were to win at trial Trudeaux would only be able to recover damages for the period of his employment with PTI. The limited scope supports this court's earlier conclusion that this case is not so complex that Trudeaux would be unable to coherently present it to a judge or jury. (*See* ECF No. 36 at 3); *see also Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). Therefore, Trudeaux's motion to appoint counsel (ECF No. 53) is denied.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment is **DENIED IN PART** and **GRANTED IN PART**. The plaintiff's failure to accommodate claim can proceed. The plaintiff's discrimination and disparate treatment claim and retaliation claim are dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED**.

Dated at Milwaukee, Wisconsin this 11th day of January, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge