UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID TRUDEAUX,

          Plaintiff,

v.                             Case No. 20-CV-169

PAPER TRANSPORT, INC.,

          Defendant.

## DECISION AND ORDER

**1. Background**

Plaintiff David Trudeaux worked as a commercial truck driver for defendant Paper Transport, Inc. ("PTI"). He was discharged from his position in March 2018. In February 2020, Trudeaux, representing himself, brought this action against PTI, alleging that PTI failed to accommodate his religious practice of observing the Sabbath, terminated him because of his religious practice, and retaliated against him for seeking religious accommodations and communicating with the Equal Employment Opportunity Commission. (ECF No. 54 at 1.) The court has since granted summary judgment as to the latter two claims, leaving only Trudeaux's claim that PTI failed to accommodate his religious practice of observing the Sabbath. (*Id.* at 13.) A final pretrial

conference is scheduled for February 27, 2024, and trial is scheduled to begin on March 11, 2024. (ECF No. 100.)

Before the court is a motion in limine filed by PTI. (ECF No. 84.) At the time that PTI filed the present motion the case was set to go to trial on June 20, 2023. (*See* ECF No. 81.) In its amended trial scheduling order dated December 8, 2022, the court ordered the parties to submit a joint final pretrial report, as well as any motions in limine, by May 9, 2023. (*Id.* at 2.) On May 9, 2023, PTI submitted a final pretrial report, as well as the motion in limine, and notified the court that Trudeaux had not responded to PTI's requests to provide information or otherwise assist with preparing the report. (ECF No. 83 at 1.)

The June 20, 2023, trial date was adjourned until the U.S. Supreme Court rendered a decision in the case *Groff v. Dejoy*, 600 U.S. 447 (2023), based on its potential impact on the dispute between the parties. (ECF No. 85.) On August 1, 2023, the court set a new trial date for October 23, 2023, ordered the parties to submit a joint final pretrial report by August 22, 2023, and ordered Trudeaux to respond to PTI's motion in limine by September 1, 2023. (ECF No. 87.) On October 16, the court adjourned the jury trial again so that Trudeaux, as well as the court, could attempt to secure counsel for Trudeaux. (ECF Nos. 94 at 1, 96 at 1.)

Trudeaux and the court were unsuccessful in finding an attorney to represent him. On January 8, 2024, in the court's third amended trial scheduling order, the court

2

set a new trial date for March 11, 2024, ordered the parties to submit a joint final pretrial report by January 19, 2024, and ordered Trudeaux to respond to PTI's motion in limine no later than January 26, 2024. (ECF No. 100.)

The parties submitted a joint pretrial report on January 19, 2024. (ECF No. 102.) Trudeaux did not respond to PTI's motion in limine until February 20, 2023, when he filed a document purporting to respond to the motion in limine, moving for reconsideration of the court's summary judgment decision and requesting continued recruitment of counsel to represent him. (ECF No. 103.) In his response Trudeaux explains that he was unable to file a timely response to PTI's motion due to his *pro se* status coupled with his mental health issues. (*Id.* at 1-2.) His response does not make arguments specific to the motion in limine, and instead mostly argues why he should have been (and should be) provided with counsel to represent him in this action.

2. **PTI's Motion in Limine**

2.1. **Witness Testimony**

PTI seeks an order prohibiting Trudeaux from offering testimony from any individual other than himself. (ECF No. 84 at 1.) PTI argues that Trudeaux should not be allowed to proffer such testimony because he did not disclose any witnesses he intends to use in a timely manner. (*Id.* at 1.)

Fed. R. Civ. P. 26(a)(3)(B) requires the parties to disclose the name, address, and telephone number of each witness it intends to call at trial at least thirty days before

3

trial, unless the court orders otherwise. In its initial scheduling order, issued on August 12, 2020, the court ordered the parties to make their initial disclosures to the opposing party in accordance with Rule 26(a) by no later than September 1, 2020. (ECF No. 23, ¶ 1.) Trudeaux did not disclose the names, addresses, and phone numbers of any witnesses he intended to call at trial.

In the parties' most recent joint final pretrial report, Trudeaux names six witnesses he intends to call at trial, two of which are also defense witnesses. (ECF No. 102 at 3-4.) Having not identified these individuals as potential witnesses pursuant to Rule 26(a), or at any time before filing the most recent joint final pretrial report, Trudeaux has deprived PTI of any advance notice of his intent to rely on their testimony.

Rule 37(c)(1) provides that a party who fails to disclose witnesses as required by Rule 26 cannot use the witnesses to supply evidence at trial unless the failure to disclose was substantially justified or harmless. Trudeaux does not explicitly argue that his failure to timely identify witnesses was substantially justified or harmless. At most his response suggests that he should not have been expected to comply with the requirements for identifying witnesses without the assistance of an attorney. (ECF No. 103 at 4.)

The court is not satisfied that Trudeaux's failure to disclose was substantially justified or harmless. As such, PTI's motion in limine seeking to prohibit Trudeaux from

offering testimony from any witness besides himself at trial will be granted. Of course, in the event PTI calls any of these individuals as witnesses, Trudeaux will be allowed to cross-examine them.

2.2. **Testimony Regarding Trudeaux's Termination and Discharge**

PTI also seeks an order prohibiting Trudeaux from offering any testimony related to his termination and discharge from PTI. (ECF No. 84 at 2.) PTI argues that any testimony related to his termination and discharge should be excluded under Fed. R. Evid. 401 and 402 because it is irrelevant to the issue of whether PTI reasonably accommodated his religious beliefs *during* his employment. (*Id.* at 3.) Additionally, PTI asserts that testimony related to Trudeaux's termination is inadmissible under Rule 403 because it will likely mislead the jury as to the scope of the trial, Trudeaux's remaining claim, and allowable damages. (*Id.*)

The scope of the trial is limited to Trudeaux's claim that PTI failed to accommodate his religious practice of observing the Sabbath for a seven-week period from January 2018 through February 2018, while he was still employed by PTI. (*See* ECF No. 54 at 12-13.) Trudeaux was not terminated until March 2018, the month after the period relevant to his claim ended. (*Id.* at 2.) The court agrees with PTI that testimony regarding Trudeaux's termination and discharge is not relevant to the question of whether PTI reasonably accommodated Trudeaux's religious practices during his employment.

Moreover, the court agrees that testimony regarding Trudeaux's termination is likely to mislead the jury. Testimony related to his termination is likely to mislead the jury as to the scope of his claim and allowable damages.

As a result, PTI's motion in limine seeking to prohibit any testimony regarding Trudeaux's termination from PTI at trial will be granted.

### 2.3. Hearsay Testimony

Finally, while acknowledging that hearsay is already barred under Fed. R. Evid. 802 (unless an exception under Rule 803 applies), and that it will have an opportunity to object to specific evidence at trial, PTI argues that "a preliminary order prohibiting the Plaintiff from proffering hearsay evidence is necessary" because it fears that Trudeaux will attempt to introduce a significant portion of his case through hearsay. (ECF No. 84 at 3.)

The court finds that a specific order is inappropriate. Without being presented with the specific evidence the court cannot determine whether it constitutes hearsay, *see* Fed. R. Evid. 801, and, if it is, whether an exception applies, *see* Fed. R. Evid. 803. But the court will remind Trudeaux that the Rules of Evidence apply to all litigants. They are not modified or relaxed for litigants who are representing themselves. Trudeaux must familiarize himself with them so that he may present his case within their bounds and so that he may raise appropriate objections should PTI's evidence not conform to the Rules.

Thus, this aspect of PTI's motion in limine will be denied.

### 3. Trudeaux's "Reconsideration of Summary Judgement; and Continued Recruitment of Counsel for Plaintiff"

Trudeaux seems to be arguing that the court should recruit counsel for him and essentially start the case over by allowing counsel to pursue discovery and then redo the proceedings regarding the defendant's motion for summary judgment. He discusses the difficulties he had in litigating this case and argues that the court must appoint an attorney because an attorney would have made a difference in the proceedings. (ECF No. 104 at 2 (discussing *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007).)

The phrase from *Pruitt* on which Trudeaux relies—whether there "is a reasonable likelihood that the presence of counsel would have made a difference in the outcome," *Pruitt*, 503 F.3d at 660—is not, strictly speaking, a factor in the court's analysis. *But see Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022) (authorizing district courts to consider the merits of the plaintiff's claim in allocating its scarce supply of pro bono attorneys). The district court's analysis involves only two steps. *Id.* at 761. First, the plaintiff must make reasonable but unsuccessful attempts to obtain counsel on his own. If the plaintiff satisfies that threshold, then the court proceeds to the second step to assess whether, "given the difficulty of the case, does the plaintiff appear competent to litigate it himself"? *Pruitt*, 503 F.3d at 654.

Whether there "is a reasonable likelihood that the presence of counsel would have made a difference in the outcome" refers to the court of appeals' review of a

district court's decision. If the court of appeals concludes that the district court abused its discretion in not attempting to recruit counsel, it will reverse only "if there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659 (emphasis in original). In other words, even if the district court erred, the court of appeals will reverse only if the error was not harmless and the plaintiff was prejudiced.

As a practical matter, the district court presumes that the presence of counsel will always make a difference. Nearly every litigant would prefer to have an attorney and nearly every litigant would be better off if represented by counsel. It is also the court's strong preference that all litigants be represented by able counsel. Attorneys' familiarity with the applicable rules and substantive law not only fosters orderly proceedings in court but facilitates settlement by assisting a client in understanding the viability of claims, the likelihood of success, the risks of trial, and the probable damages if the plaintiff were to prevail at trial. But, as the court explained previously, *Trudeaux v. Paper Transp., Inc.*, No. 20-CV-169, 2022 U.S. Dist. LEXIS 174550 (E.D. Wis. Sep. 26, 2022), it is impossible for the court to be able to find attorneys to represent all the litigants who want (and who would benefit from) them, *see Roberts v. Jezuit*, No. 21-3022, 2022 U.S. App. LEXIS 25080, at *5 (7th Cir. Sep. 7, 2022) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

The court lacks any authority to appoint an attorney to represent a civil litigant, much less any ability to pay them for their work. The most the court can do is attempt to recruit a volunteer. Because all persons generally prefer to be paid for their labors, the pool of attorneys willing to work for free is small in comparison to the pool of litigants seeking representation. The court noted in its prior decision that "more than a quarter of all federal civil actions involve at least one pro se litigant." *Trudeaux*, 2022 U.S. Dist. LEXIS 174550, at *2 (citing United States Courts, *Just the Facts: Trends in Pro Se Civil Litigation from 2000 to 2019* (Feb. 11, 2021), https://www.uscourts.gov/news/2021/02/11/just-facts-trends-pro-se-civil-litigation-2000-2019). The disparity is even more profound in this district. Of all the civil cases filed in this district last year (1,669), more than half (863) involved a pro se litigant. *See* Administrative Office of the United States Courts, Table C-1, U.S. District Courts–Civil Pro Se and Non-Pro Se Filings, by District, During the 12-Month Period Ending December 31, 2023. Currently pending in this district there are 745 cases where at least one litigant is unrepresented. Almost every one of these unrepresented litigants lacks any legal training and faces a myriad of problems (physical or mental health problems, educational deficits, and incarceration being the most common) that make self-representation exceptionally difficult.

Thus, the court must engage in triage. *See Watts*, 42 F.4th at 764. In the spectrum of unrepresented litigants that come before the court, Trudeaux has demonstrated abilities far beyond most litigants. *See Trudeaux*, 2022 U.S. Dist. LEXIS 174550, at *3-4.

And, again, this case is comparatively straightforward and narrow such that a pro se litigant (especially one with the aptitude and skill Trudeaux has demonstrated) could be expected to be able to present it to a jury. *Trudeaux*, 2022 U.S. Dist. LEXIS 174550, at *5; *see also Pruitt*, 503 F.3d at 655 ("There are no fixed requirements for determining a plaintiff's competence to litigate his own case; the judge will normally take into consideration the plaintiff's literacy, communication skills, educational level, and litigation experience. To the extent there is any evidence in the record bearing on the plaintiff's intellectual capacity and psychological history, this, too, would be relevant."); *cf. Olson*, 750 F.3d at 712 (discussing plaintiff's demonstrated ability to following instructions and make intelligible arguments despite mental impairments). Based on these considerations, the court concluded that it was inappropriate to attempt to recruit counsel for Trudeaux.

However, as the case proceeded, the court found that Trudeaux's personal circumstances had come to so overwhelm him that it became appropriate to attempt to recruit counsel to represent him at trial. The court put the case on hold while it attempted to recruit an attorney to represent him.[1]

The court attempts to recruit attorneys through its website. It maintains on its website a list of cases for which it is seeking volunteer counsel. *See* https://www.wied.uscourts.gov/pro-bono-opportunities-attorneys. A banner listing

---

[1] The court previously was able to recruit counsel to represent Trudeaux for purposes of mediation, but she declined to stay on the case thereafter.

"Pro Bono Opportunities" is literally front and center on the court's website. Cases are divided into three categories—Mediation; Discovery, Draft/Respond to Dispositive Motions, and Pursue Settlement; and Trial. Each case is listed by name and number and is then followed by a paragraph describing the case. The court, in cooperation with the Eastern District of Wisconsin Bar Association, actively encourages attorneys to regularly consult this list and at every opportunity reminds attorneys of the constant need for volunteer attorneys.

When the court listed Trudeaux's case as one for which the court was seeking a volunteer attorney, court staff received a few inquiries from attorneys about this case. In response, court staff provided the attorneys with relevant documents, *e.g.*, the complaint and the court's summary judgment decision. All attorneys ultimately declined to represent Trudeaux. As the Seventh Circuit has stated,

> At some point a court must be entitled to stop beating the bushes for counsel. The alternative—holding a case in stasis for what may be an extended time until someone finally agrees to represent the plaintiff *pro bono*—could impose substantial costs on the defendants (whose memories would fade and whose evidence would become stale) and the judicial system alike.

*Roberts v. Neal*, 713 F. App'x 509, 510 (7th Cir. 2018).

This matter has reached the point where the court has no option but to proceed. The court has employed every tool at its disposal in an attempt to accommodate Trudeaux. The court has repeatedly extended deadlines and attempted to recruit an attorney to represent him. The case is now more than four years old largely due to

delays attributable to Trudeaux. (*See, e.g.*, ECF Nos. 20 (requesting rescheduling of Rule 16 conference); 24 (requesting extension of time for initial disclosures, etc.) 29 (defendant's motion for extension of time due to Trudeaux's failure to timely respond to discovery and to appear at deposition); 33 (requesting stay of deposition until court "appoints" counsel for plaintiff); 46 (motion for extension of time to respond to motion for summary judgment); 48 (motion for extension of time to respond to motion for summary judgment); 56 (Trudeaux's notice of appeal); 79 (motion to adjourn trial); 91 (motion to adjourn status conference); 94 (adjournment of jury trial).

A jury trial is scheduled to begin on March 11, 2024. Any further delay would be unfair to the defendant, which has repeatedly expressed its desire to bring this matter to a conclusion. It also would be unlikely to materially change the relevant circumstances, either by counsel agreeing to represent Trudeaux or Trudeaux's personal circumstances improving. The court has already repeatedly adjourned this matter based on Trudeaux's representations that he expected to be in a better position to prosecute this action once he gets one personal matter or another behind him.

Although it is the court's preference that Trudeaux be represented by counsel, it simply has no means to make that happen. This unfortunate circumstance merely underscores what the court discussed above—there are simply not enough attorneys willing to work for free to represent litigants who would benefit from having them, and "courts must be careful stewards of the limited resource of volunteer lawyers," *Watts*, 42

F.4th at 764 (quoting *Eagan v. Dempsey*, 987 F.3d 667, 700 (7th Cir. 2021) (Easterbrook, J., dissenting in part)). Trudeaux's motions must be denied.

**IT IS THEREFORE ORDERED** that PTI's motion in limine (ECF No. 84) is GRANTED in part and DENIED in part. It is GRANTED with respect to PTI's motion seeking to prohibit Trudeaux from offering testimony from any witness other than himself, as well as PTI's motion seeking to prohibit Trudeaux from offering testimony regarding his termination and discharge from PTI. It is DENIED with respect to PTI's motion seeking to prohibit Trudeaux from offering hearsay testimony.

**IT IS FURTHER ORDERED** that Trudeaux's motion for "Reconsideration of Summary Judgement; and Continued Recruitment of Counsel for Plaintiff" (ECF No. 104) is denied.

Dated at Milwaukee, Wisconsin this 23rd day of February, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge