# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

DAVID TRUDEAUX,

          **Plaintiff,**

      **v.**                        **Case No. 20-CV-169**

PAPER TRANSPORT, INC,

          **Defendant.**

---

## DECISION AND ORDER

---

David Trudeaux worked briefly as a truck driver for Paper Transport, Inc. He was fired for multiple safety violations, but he alleged that Paper Transport violated Title VII by failing to accommodate his religious practices during seven of the weeks he worked for Paper Transport. *See Trudeaux v. Paper Transp., Inc.*, No. 20-CV-169, 2022 U.S. Dist. LEXIS 4956 (E.D. Wis. Jan. 11, 2022). Specifically, he alleged that Paper Transport failed to provide him with a schedule that allowed him to be home by sundown on Fridays. Paper Transport disputed Trudeaux's allegations. It asserted that it reasonably accommodated Trudeaux's religious practices and that Trudeaux's own scheduling errors led to him not being home on time.

A jury trial was scheduled to begin on March 11, 2024. Trudeaux, who is representing himself, failed to appear. Instead, roughly nine hours before the start of trial he sent an email to court staff stating that shortly after beginning his drive from his home in Louisianna to the court he began to feel pressure in his chest and stopped at a hospital. He stated that he was only recently discharged. A photograph of a largely illegible after visit summary that he included in his email did not appear to contain any diagnosis or relevant details other than to state that he was able to return to work the next day, March 11, 2024, the day the trial was to begin.

Defense counsel appeared as scheduled for the start of trial. The court was able to contact Trudeaux by phone while defense counsel and his client were in court. Trudeaux stated that he left his home in Pollock, Louisiana at 10:00 AM on Sunday, March 10, the day before the trial was scheduled to begin, driving alone. According to Google Maps, it would take more than 15 hours to make the nearly thousand-mile journey to Milwaukee. Therefore, Trudeaux would not have arrived in Milwaukee until 1:00 AM on Monday morning for an 8:30 AM jury trial, and that is without accounting for any time to rest, eat, go to the bathroom, or refuel. Trudeaux stated he had not made any hotel reservation for Sunday evening or early Monday morning upon his anticipated arrival in Milwaukee.

Despite the fact that it appeared the case would require only a single day to try, the court had set aside two days. Therefore, the court agreed to allow Trudeaux to appear

2

on March 12 for the start of trial, but cautioned him that, if he failed to appear, his case might be dismissed for failure to prosecute.

Later that day, shortly before 5:00 PM, court staff received another email from Trudeaux stating that he would not be appearing as required. He stated that, after his call with the court, he checked into taking a plane to Milwaukee, and found that "[f]lights were not as unreasonable as expected but exceeds my budget for gas, food and lodging combined and the latter still being necessary as well as ground transportation. This is not something I could suddenly undertake on such short notice." Trudeaux had known about the trial date for over two months. But he decided to return home rather than continue traveling to court for the scheduled trial.

Again, defense counsel appeared as required on March 12 for the scheduled start of trial. Trudeaux failing to appear, the court again contacted him by phone. The court asked Trudeaux to provide any reason he had as to why this action should not be dismissed. Trudeaux stated he had nothing further to say.

In addition to twice failing to appear for trial, Trudeaux has repeatedly failed to appear at telephonic status conferences (ECF Nos. 90, 97, 98), failed to comply with court orders (ECF Nos. 83, 88), and delayed this action (ECF Nos. 24, 45, 46, 48, 79). Most recently, he has attributed these actions to a deterioration in his mental health, which includes "depression, mood swings, irritability and inability to sleep" (ECF No. 91), anxiety, and a diagnosis of severe major depressive disorder (ECF No. 93).

"Medical treatment can justify a delay of trial, "*Zhou v. Belanger*, 528 F. App'x 618, 622 (7th Cir. 2013), but Trudeaux has fallen far short of the "detailed showing" necessary to show that a delay is justified, *id.* (quoting *Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 874-76 (7th Cir. 2001) citing *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 528 (8th Cir. 2000)).

The court consistently made every effort to accommodate Trudeaux, including attempting to recruit counsel to represent him. However, when it became clear that an attorney was not going to agree to represent Trudeaux, the court was compelled to proceed. *See Trudeaux v. Paper Transp., Inc.*, No. 20-CV-169, 2024 U.S. Dist. LEXIS 31094, at *15 (E.D. Wis. Feb. 23, 2024). As the court stated:

> Any further delay would be unfair to the defendant, which has repeatedly expressed its desire to bring this matter to a conclusion. It also would be unlikely to materially change the relevant circumstances, either by counsel agreeing to represent Trudeaux or Trudeaux's personal circumstances improving. The court has already repeatedly adjourned this matter based on Trudeaux's representations that he expected to be in a better position to prosecute this action once he gets one personal matter or another behind him.

*Id.* at *14-15.

The court recognizes that anxiety and depression can greatly affect a person's daily activities, especially stressful matters such as travel or prosecuting a lawsuit. But such impairments are not uncommon among the population of pro se litigants, and a person who brings a lawsuit has an obligation to prosecute it. *See* Fed. R. Civ. P. 41(b).

Everyone involved in this action has made repeated efforts to accommodate Trudeaux and his professed limitations. This has resulted in great inconvenience and undoubtedly significant extra costs to the defendant. Yet while everyone has been making significant efforts to accommodate Trudeaux's limitations, it appears that the one person not attempting to accommodate his limitations is Trudeaux.

Trudeaux's failures to appear for trial were not the result of a sudden illness, such as a heart attack or even a bout of the flu. It was entirely foreseeable that his depression and anxiety would make travel more difficult. With more than two months' notice, Trudeaux should have made efforts to accommodate his impairments—whether that meant leaving days in advance, receiving a ride from a friend or family member, or traveling by common carrier.

Rather than taking these common-sense measures, Trudeaux waited until mid-morning on the day before trial to begin a 15-hour drive to Milwaukee, which at best would have resulted in him arriving for the trial sometime after midnight. That timeline is not reasonable for any person and most certainly not for a person who suffers from anxiety and depression that are exacerbated by stress. Trudeaux had not even made any arrangements for a place to stay in Milwaukee (stating that he intended to find a last-minute online deal for a hotel). These actions are not consistent with a good faith effort to appear as required for the start of trial.

Also, just five days before trial, Trudeaux attempted to pursue a frivolous interlocutory appeal. (ECF No. 108.) Given his overall track record in this case, the court must regard this effort as yet another attempt to delay trial. Trudeaux had made a similar attempt before (ECF Nos. 61, 65); *Trudeaux v. Paper Transp., Inc.*, No. 22-1177, 2022 U.S. App. LEXIS 21713 (7th Cir. May 23, 2022). Because Trudeaux did not explicitly identify that prior appeal as arising under 28 U.S.C. § 1292, out of an abundance of caution (lest the court later be found to have acted without jurisdiction) the court put the case on hold until the court of appeals dismissed that first appeal, which it promptly did, *Trudeaux*, 2022 U.S. App. LEXIS 21713. The court cannot help but infer that Trudeaux expected the same result with his most recent appeal, delaying the trial with just five days to go.

The court has no reason to believe that any further delay will result in Trudeaux's professed limitations abating. As noted, his condition is longstanding. He has not provided any medical record indicating progress or even his prognosis. The information he has provided is largely in the form of his self-reports, and the court has little in the form of corroboration as to the severity of his symptoms or how they affect his daily activities. The most-recent medical record the court received—the March 10, 2024 after visit summary from the emergency room—stated that Trudeaux did not have any impairment that affected his ability to work (and thus appear as required and prosecute this case). In his March 11 email to the court explaining that he was not going to be in court as required the following day, Trudeaux stated that he had not had a chance to

speak with his primary care provider, who "is now booked through October/November so I've been placed on priority in the event of a cancellation."

Trudeaux has placed much emphasis on the fact that he has been representing himself in this action. However, as the court has laid out in detail, *Trudeaux*, 2024 U.S. Dist. LEXIS 31094, at *13, there is simply nothing more the court can legally or ethically do to obtain counsel for him. The court cannot order or coerce an attorney to represent a civil litigant, and despite the court's efforts to identify an attorney, no one in the local bar has elected to represent Trudeaux at trial. The court, however, was successful in finding an attorney willing to represent Trudeaux at mediation, but when that mediation proved unsuccessful she was not willing to continue to represent him in further proceedings.

The court fully appreciates that dismissal with prejudice is the harshest sanction available to the court and therefore must be reserved for extreme situations. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011); *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). But it is appropriately employed "when the plaintiff is not ready for trial or fails to appear." *Owen*, 985 F.2d at 317 (citing *Lockhart v. Sullivan,* 925 F.2d 214 (7th Cir. 1991); *3 Penny Theater Corporation v. Plitt Theatres, Inc.,* 812 F.2d 337 (7th Cir. 1987)). The court must consider all the factors of the case but should pay particular attention to

> the frequency of the plaintiff's failure to comply with deadlines; whether the responsibility for mistakes is attributable to the plaintiff herself or to the plaintiff's lawyer; the effect of the mistakes on the judge's calendar; the prejudice that the delay caused to the defendant; the merit of the suit; and the consequences of dismissal for the social objectives that the litigation represents.

*Kasalo*, 656 F.3d at 561.

As noted above, Trudeaux has repeatedly failed to comply with deadlines throughout this action. Aside from early delays that Trudeaux attributed to severe weather, the subsequent delays were all attributable to Trudeaux. Although he pointed to personal circumstances—his father-in-law had recently died, his mother was admitted to assisted living, and he was in the process of selling her home—as reasons for adjourning the trial (ECF No. 79), they were of a sort that persons are routinely expected to surmount to attend to important matters in their lives.

Trudeaux's delays, and most especially his failures to appear for trial, were highly disruptive to the court's calendar. Every trial requires special arrangements for the court and court staff. There are countless ripple effects when the lives of those associated with a trial are disrupted as they make arrangements for the long hours that trials entail. Jurors were summoned, undoubtedly at great inconvenience to them. The court incurred the costs of procuring the jurors. Setting aside days for trial means those days cannot be devoted to other matters, delaying resolution of other cases.

Importantly, the defendant has been significantly prejudiced by Trudeaux's actions. Twice previously defense counsel and his client and witnesses had to prepare for trial only to have the trial rescheduled at Trudeaux's request. This week defense counsel and his client and witnesses traveled from Green Bay, incurring travel and hotel expenses. Because Trudeaux did not inform the court until late Monday that he would

not appear as required on Tuesday, the defendants incurred lodging expenses for an additional night to appear in court on Tuesday morning. These costs and expenses were on top of the expenses associated with the repeated conferences and adjournments that resulted from the court's efforts to accommodate Trudeaux. In the context of a simple case like this, those are significant expenses.

The events that underlie this case occurred six years ago, and more than four years have elapsed since this case was filed. That is a long time for a very simple case. The defendant is entitled to have this matter behind it.

The imposition of sanctions is one of the few circumstances where a court may comment on the merits of a pending case. *See Kasalo*, 656 F.3d at 561. Although the evidence was sufficient to survive summary judgment on one claim, even if he prevailed at trial (which would appear to be a long shot) Trudeaux's damages seem to be somewhere between non-existent and extremely minimal.

Finally, as to the "consequences of dismissal for the social objectives that the litigation represents," religious accommodation cases are socially important. They are the means by which the nation's employment discrimination laws are enforced. But any violation here seems to have been more technical than malevolent. Even Trudeaux acknowledged that the defendant's manager "was 'making a good-faith effort' to accommodate his needs and that she was 'very professional' and 'helpful.'" *Trudeaux*, 2022 U.S. Dist. LEXIS 4956, at *5 (quoting ECF No. 44-1 at 6, 7, 101:8-22, 102:6-12.)

The court has considered lesser sanctions, *see Kasalo*, 656 F.3d at 562, including ordering Trudeaux to pay the costs needlessly incurred as result of his failures to appear. This would include the court's costs incurred in bringing in jurors and those incurred by the defendant in the form of attorney fees and hotel and travel expenses for counsel, his client, and witnesses. *See Froemming v. Carlson*, No. 19-CV-996-JPS, 2023 U.S. Dist. LEXIS 103151, at *42 (E.D. Wis. June 14, 2023) (citing cases).

Trudeaux, however, is indigent (ECF Nos. 2, 5) and without any means to pay any monetary sanction. Consequently, any sanction would be unlikely to deter future misconduct. Because the costs that the court and the defendant needlessly incurred as a result of Trudeaux's failures to appear significantly exceed what Trudeaux is likely to obtain under even a best-case-scenario outcome at trial, simply setting those costs off against any ultimate judgment again would prove to be an ineffective deterrent. And while the court could first order Trudeaux to pay those costs and wait to dismiss the action if he fails to timely pay, in the absence of any hint that he has the means to pay just forces the court and the defendant to incur additional costs and inconvenience to tally what Trudeaux owes.

Accordingly, the court finds no other option but to grant the defendant's oral motion to dismiss this action with prejudice pursuant to Fed. R. Civ. P. 41(b). The Clerk shall enter judgment accordingly.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 13th day of March, 2024.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge